Judge Berman

# 07 CV 3563

NEW YORK
COUNTY CLERK'S OFFICE

MAY — 4 2007

NOT COMPARED
WITH COPY FILE

MAY 0 4 2007

Paul H. Levinson, Esq. (PL 5528)
**McLaughlin & Stern, LLP**
260 Madison Avenue, 18th Floor
New York, New York 10016
Tel.: (212) 448-1100 (ext. 190)

Christopher E. Hartmann, Esq. (CH 4873)
**Wacks & Hartmann, LLC**
404 Park Avenue South, 14th Floor
New York, New York
(973) 644-0770 (ext. 204)
(212) 481-2744
*Attorneys for Defendant General Office Environments*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANCKER, SELLEW & DOUGLAS,<br><br>              Plaintiff,<br><br>against<br><br><br>JOSEPH MILLER and<br>GENERAL OFFICE ENVIRONMENTS, INC.,<br><br>              Defendants. | Civil Action No.:<br><br><br><br>**NOTICE OF REMOVAL** |

**TO:**    THE HONORABLE JUDGES
of the United States District Court
for the Southern District of New York:

1.      Pursuant to 28 U.S.C. §§ 1441 and 1446, defendant General Office

Environments, Inc. ("GOE"), by its undersigned attorneys, McLaughlin & Stern, LLP and

Wacks & Hartmann, LLC, submits this Notice of Removal from the Supreme Court of the State of New York, County of New York, in which the above-captioned action is now pending, to the United States District Court for the Southern District of New York and in support of said Notice, GOE states as follows:

### Procedural History

2.      This action was commenced by way of a Verified Complaint filed in the Supreme Court of the State of New York, County of New York, on or about May 2, 2007. The action is captioned as *Dancker, Sellew & Douglas, Inc. v. Joseph Miller and General Office Environments, Inc.,* Index No.: 105976/07.

3.      On May 3, 2007, defendant GOE received a copy of the Summons, Verified Complaint, Order to Show Cause, Affidavits by Steven Lang, Nicole Schmitz and Paul P. Rooney, Esq. and plaintiff's Memorandum of Law. (True and correct copies of these papers are collectively attached hereto as Exhibit "A"). The papers were faxed to GOE and later to its counsel in advance of a hearing on plaintiff's application for a temporary restraining order. GOE has not been formally served with process.

4.      GOE is not aware of any other proceedings in this matter.

### The Parties

5.      Defendant GOE is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 18 Railroad Avenue, Rochelle Park, New Jersey 07662. Defendant Joseph Miller is an individual who lives at 1000 Evergreen Avenue, Bradley Beach, New Jersey 07720.

6.     Plaintiff alleges in its Verified Complaint that it is a New York corporation with its principal place of business located at 100 Broadway, New York, New York.

## Jurisdiction

7.     This Court has subject-matter jurisdiction of the action pursuant to 28 U.S.C. §§ 1332, in that complete diversity exists among the parties and upon information and belief the amount in controversy alleged by Plaintiffs exceeds $75,000.00.

## Basis For Removal

8.     Complete diversity exists among the parties.  The amount in controversy exceeds $75,000.00, inasmuch as plaintiff has made unspecified contract and tort damage claims, including claims for punitive damages, in amounts plaintiff seeks "to be determined by the court."

9.     Pursuant to 28 U.S.C. § 1441(a), removal to the United States District Court for the District of New Jersey is proper as this is the Federal District Court for the District and Division embracing the place where the state court suit is pending.

10.     This Notice of Removal is being filed within thirty (30) days of GOE's receipt of the Summons and Complaint, as required by 28 U.S.C. § 1446(b).

11.     GOE's time to answer or move with respect to the Complaint has not expired, and GOE reserves all available substantive jurisdictional defenses.

12.     Written notice of the filing of this Notice of Removal will be provided to plaintiff, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, notice is given that this action is removed from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York.

McLaughlin & Stern, LLP
Attorneys for Defendant
General Office Environments, Inc.

By: _____
      Paul H. Levinson
      (PL 5528)

May 4, 2007

# ReedSmith

# FAX TRANSMITTAL

**From: Paul P. Rooney**
Direct Phone: 212.521.5435
Email: prooney@reedsmith.com
Date: May 3, 2007

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450

### Total Number Of Pages Including Cover Page 4

## FAX TO

| Name | Company | Fax Number | Phone Number |
|------|---------|-----------|--------------|
| Chris Hartman, Esq. | | (973) 644-2224 | (973) 644-0770 |

**Original will follow via:**  ☐ Regular Mail  ☐ Overnight Delivery  ☐ Messenger  ☒ None

## NOTES:

The Court asked me to forward a copy of my papers to you.

The Court clerk also asked me to note that sending this copy of the papers to you does not constitute service of process upon your client.

-- Paul Rooney

**If you do not receive all of the pages, please call Anne Magee at 212.549-0257.**

Please Transmit Before  ☐9  ☐10  ☐11 a.m.  ☐12  ☐1  ☐2  ☐3  ☐4  ☐5  ☐6  ☐7  ☐8 p.m.

| Client Number: | 883314 | Matter Number: | 50001 | Attorney Number: | 3284 |
| Transmission Time: | | am/pm | Finish Time: | | am/pm |
| Operator: | | | | | |

PLEASE NOTE: The information contained in this facsimile message may be privileged and confidential, and is intended only for the use of the individual(s) or entity named above who has been specifically authorized to receive it. If the reader is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return all pages to the address shown above. Thank you.

NEW YORK ♦ LONDON ♦ CHICAGO ♦ PARIS ♦ LOS ANGELES ♦ WASHINGTON, D.C. ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND

MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ BIRMINGHAM ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

reedsmith.com

NYLIB-429971.1-PPROONEY 5/3/07 3:40 PM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------x

DANCKER SELLEW & DOUGLAS, INC. ,

                Plaintiff,

     v.

JOSEPH MILLER, and
GENERAL OFFICE ENVIRONMENTS, INC. ,

              Defendants.

------------------------------------x

: Index No.

: **SUMMONS**

: *Plaintiff designates venue as the*
*County of New York*

:

: *The basis of venue is Plaintiff's*
*place of business and contractual*
*agreement with Defendant*
*Joseph Miller*

TO THE ABOVE-NAMED DEFENDANT(S):

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on plaintiff within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       May 2, 2007

                        **REED SMITH LLP**

                        By: _____

                            Paul P. Rooney
                            *Attorneys for Plaintiff*
                            599 Lexington Avenue
                            29th Floor
                            New York, New York 10022
                            (212) 521-5400

Defendants' Addresses:

Mr. Joseph Miller
1000 Evergreen Avenue
Bradley Beach, New Jersey 07720

General Office Environments, Inc.
18 Railroad Avenue
Rochelle Park, New Jersey 07662

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------x

DANCKER SELLEW & DOUGLAS, INC.,

              Plaintiff,

      v.

JOSEPH MILLER, and
GENERAL OFFICE ENVIRONMENTS, INC.,

              Defendants.

------------------------------------------------x

:   Index No.

:   **VERIFIED COMPLAINT**

Plaintiff DANCKER, SELLEW & DOUGLAS, INC. ("Dancker"), by its attorneys, Reed Smith LLP, as and for its Verified Complaint against the Defendants, alleges as follows:

### THE PARTIES

1.     Dancker is a New York corporation with its principal place of business at 100 Broadway, New York, New York.

2.     Defendant Joseph Miller ("Miller") is an individual residing at 1000 Evergreen Avenue, Bradley Beach, New Jersey 07720.

3.     Defendant General Office Environments, Inc. ("General Office Environments" or "GOE") is, upon information and belief, a corporation that has its principal place of business at 18 Railroad Avenue, Rochelle Park, New Jersey.

### JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter because Plaintiff seeks injunctive relief against Defendants and Plaintiff seeks damages.

5.      Venue is proper in this Court because Plaintiff's place of business is located in New York County.

6.      This Court has personal jurisdiction over Defendant Miller because he consented to the jurisdiction of the New York state courts in the Employee Noncompetition, Confidentiality and Conflict of Interest Agreement dated September 12, 2005 between Miller and Plaintiff (the "Agreement") that is the subject matter of this lawsuit.

7.      The Court has personal jurisdiction over Defendant GOE because it is committing a tortious act outside the state of New York that is causing harm to Dancker within the state of New York and because, upon information and belief, GOE regularly does or solicits business in New York, derives substantial revenue from goods used or consumer or services rendered in New York, should reasonably expect that its unlawful acts will have consequences in New York, and derives substantial revenue from interstate commerce.

## FACTS

8.      Dancker is in the business of selling furniture and related consulting services.

9.      Dancker's business includes the sale of laboratory furniture to construction companies and end-user clients, such as schools, colleges, and manufacturers.  It was in this business that Miller worked as a sales representative for Dancker at its office at 291 Evans Way, Branchburg, New Jersey.

10.     On September 12, 2005, during his tenure as a Dancker employee, Miller signed the Agreement.  As a Dancker sales representative, Miller was given an expense account, and access to all of Dancker's clients, personnel and resources, for the purpose of building the good will of Dancker.  The Agreement is intended to provide reasonable protection to Dancker's good

-2-

will and to prevent the good will that Dancker created and maintained at its expense from being

appropriated and exploited by Miller for a competitor of Dancker.

11.    Miller resigned his employment with Dancker on April 3, 2007.

12.    On or about April 16, 2007, Miller became employed by Dancker's competitor,

General Office Environments ("GOE") as a sales representative selling laboratory furnishings.

GOE did not have any business in the area of laboratory furniture before Miller joined GOE

along with other Dancker employees that, upon information and belief, Miller recruited from

Dancker's laboratory furniture team.

13.    Upon information and belief, Miller is assisting GOE in bidding on at least three

projects for which Dancker is seeking to sell laboratory office furniture to clients, including

Mercer County College, Anheuser Busch, and Rutgers University.  It is clear that, without

Miller, and the other Dancker employees that we believe Miller recruited, GOE would not have

the knowledge, capacity, contracts, or ability to bid on these projects in competition with

Dancker.

14.    Miller's employment with GOE is in direct violation of the terms of the

Agreement because the Agreement precludes Miller from being employed by any competing

business for 18 months after his employment with Dancker ends.

15.    Specifically, the Agreement provides as follows:

> **1.1** <u>Agreement Not To Compete with Company</u>.  During the time
> Employee is employed by the Company (the "Term") and for a
> <u>period of eighteen months</u> following the end of the Term (the
> "Applicable Period"), Employee shall not own, manage, have an
> interest or future interest or participate in, or be employed by any
> Competing Business.  Other than as a holder of common stock in a
> publicly traded company.  "Competing Business" means any entity

-3-

> or person in the business of manufacturing, producing, selling or distributing office furnishings at any time during the Term or the Applicable Period that does business within the geographic areas comprising the principal market areas of the Company."

16.    GOE, which engages in the sale of the same office furniture products and related services as Dancker, in the same geographic region comprising the principal market areas of Dancker, specifically, central and northern New Jersey is a "Competing Business" within the meaning of that phrase in the Agreement.

17.    Accordingly, Miller is violating his Agreement by virtue of his employment as a sales representative with GOE.

18.    In the Agreement, Miller also promised that he would not, during or for a period of 18 months after the termination of his employment with Dancker, "directly or indirectly solicit or induce, or attempt to solicit or induce, any employee of [Dancker] to leave [Dancker] for any reason."

19.    Miller breached that provision of the agreement by soliciting a Dancker employee, Nicole Sschmitz, to become an employee of GOE while Miller was still employed by Dancker.

20.    In a letter dated April 13, 2007, Dancker requested that Miller cease his unlawful activities. To date, Miller has declined to do so.

21.    Dancker copied Miller's employer, GOE, on the letter, and it too has continued to employ Miller, tortiously interfering with Dancker's contract with Miller.

22.     Miller's actions are harming the good will of Dancker and money damages will be difficult or impossible to calculate and, therefore, Dancker has no adequate remedy at law and will suffer irreparable harm if Miller's actions are not immediately enjoined.

## FIRST CAUSE OF ACTION:

### INJUNCTION AGAINST BREACH OF NONCOMPETITION AGREEMENT BY MILLER

23.     Dancker repeats and realleges its allegations in paragraphs 1-22 as if fully set forth herein.

24.     Miller has violated his agreement with Dancker by accepting employment with a competing business, GOE.

25.     As a result of Miller's unlawful breach of the Agreement, Dancker is suffering, and will continue to suffer, permanent irreparable harm to its goodwill, reputation, and business that will not be compensable by monetary damages.

26.     Accordingly, Dancker is entitled to an injunction barring Miller's employment by GOE for a period of 18 months or, in the alternative, an injunction barring Miller from being employed selling laboratory office furniture for GOE.

### SECOND CAUSE OF ACTION: INJUNCTION AGAINST BREACH OF NON-SOLICITATION AGREEMENT BY MILLER

27.     Dancker repeats and realleges its allegations in paragraphs 1-25 as if fully set forth herein.

28.     Miller has violated the provisions of the Agreement prohibiting him from soliciting Dancker's employees.

29.    Miller's actions are likely to be repeated and would cause irreparable harm to Dancker's business if not enjoined in the future.

30.    Dancker has no adequate remedy at law for Miller's unlawful solicitation of its employees.

### THIRD CAUSE OF ACTION:
### BREACH OF CONTRACT AGAINST MILLER

31.    Dancker repeats and realleges it allegations in paragraphs 1-27 of its Verified Complaint as if fully set forth herein.

32.    Miller's actions are a breach of his contract with Dancker.

33.    As a result of Miller's breach of contract, upon information and belief, Dancker has been damaged.

34.    Insofar as said damages can be proven, Dancker is entitled to recover the damages caused by Miller's breach of contract in an amount to be determined by the Court.

### FOURTH CAUSE OF ACTION:
### TORTIOUS INTERFERENCE AGAINST GOE

35.    Dancker repeats and realleges it allegations in paragraphs 1-31 of its Verified Complaint as if fully set forth herein.

36.    GOE is intentionally, and with full awareness of Miller's contractual obligations to Dancker, employing Miller.

37.    Consequently, GOE is intentionally interfering with Dancker's contract with Miller.

38.    As a result of GOE's intentional interference with Dancker's contract, upon information and belief, Dancker has been damaged and will continue to be damaged

-6-

WHEREFORE, Dancker prays that the Court enter judgment in its favor for the following relief:

On its FIRST CAUSE OF ACTION, Dancker requests that the Court enter a temporary, preliminary and permanent injunction against Miller's continued employment at GOE;

On its SECOND CAUSE OF ACTION, Dancker requests that the Court enter a temporary, preliminary, and permanent injunction against Miller soliciting employees of Dancker to leave their employment;

On its THIRD CAUSE OF ACTION, Dancker requests that the Court award it damages in an amount to be determined by the Court;

On its FOURTH CAUSE OF ACTION, Dancker requests that the Court award it compensatory and punitive damages in an amount to be determined by the Court.

On all of its causes of action, Dancker further requests that the Court grant it costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems appropriate.

Dated:    May 2, 2007
          New York, New York

                              REED SMITH LLP

                              By:
                                  Paul P. Rooney
                                  599 Lexington Avenue
                                  New York, New York 10022
                                  (212) 521-5400

                              *Attorneys for Plaintiff*
                                  *Dancker, Sellew & Douglas, Inc.*

-7-

## VERIFICATION

STATE OF NEW JERSEY    )
                       ) ss:
COUNTY OF SOMERSET     )

STEVEN LANG, being duly sworn, states that he is an officer of the Plaintiff

Dancker, Sellew & Douglas, Inc., and that the foregoing Verified Complaint is true to his own

knowledge, except as to matters therein stated on information and belief, and as to those matters

he believes them to be true.

STEVEN LANG

SWORN TO BEFORE ME
THIS 1ST DAY OF MAY 2007

NOTARY PUBLIC

BETTY J. ANDRE
Notary Public of New Jersey
Commission Expires 8/9/2010

-8-

At IAS Part ____ of the Supreme
Court of the State of New York,
County of New York, 60 Centre
Street, New York, New York, on the
____ day of May 2007

P R E S E N T :

      HON.

                Justice.

--------------------------------------------------------X

DANCKER, SELLEW & DOUGLAS, INC.,

              Plaintiff,

    -against-

JOSEPH MILLER and
GENERAL OFFICE ENVIRONMENTS, INC.,

              Defendants.

--------------------------------------------------------X

Index No. 105976/07

ORDER TO SHOW CAUSE

      Upon reading and filing the annexed affidavit of Steven Lang, duly sworn to on the 1st

day of May 2007, and the exhibits thereto, the Affidavit of Nicole Schmitz, duly sworn to on the

1st day of May 2007,  the Affidavit of Emergency of Paul P. Rooney, Esq., duly sworn to on

May 1, 2007, the Affirmation of Non-Frivolousness of Paul P. Rooney, Esq., affirmed on May 2,

2007, and the Plaintiff's memorandum of law, and upon the summons and verified complaint

herein and proceedings heretofore had herein, and due deliberation having been had thereon, and

sufficient cause appearing therefore,

      **LET** Defendant, JOSEPH MILLER, show cause before an IAS Part ____ of this Court at

60 Centre Street, New York, New York , on the ____ day of May 2007 at _____ a.m./p.m. on

that day, or as soon thereafter as counsel can be heard, why an order should not be entered

enjoining Defendant Joseph Miller, pursuant to CPLR § 6301 from (i) continuing to be employed

by Defendant General Office Environments, Inc. in violation of his Empoyee Noncompetition,

Confidentiality, and Conflict of Interest Agreement (the "Agreement"), dated September 12,

NYLIB-429446.1-PPROONEY 5/2/07 1:07 PM

2005, with Plaintiff Dancker Sellew & Douglas, Inc. ("Dancker"); and (ii) soliciting Dancker employees to leave their employment in violation of the Agreement.

NOW, sufficient cause appearing therefore, it is

ORDERED, that pending the hearing of the application, Defendant Miller is hereby stayed and temporarily enjoined from (i) being employed by Defendant General Office Environments, Inc.; and (ii) soliciting Dancker employees to leave their employment with Dancker.

ORDERED, that service of a copy of this order to show cause, together with the documents in support thereof, and the summons and verified complaint with the index number and date purchased endorsed thereon by service pursuant to CPLR § 308 upon defendant Joseph Miller and service upon Defendant General Office Environments, Inc. pursuant to CPLR § 311, on or before the ____ day of May 2007, be deemed good and sufficient service.

ORDERED that answering papers, if any, shall be served, so as to be received by Plaintiff's attorneys, Reed Smith, LLP, 599 Lexington Avenue, 29th Floor, New York, New York 10022 by 3:00 p.m. on May __, 2007; and it is further

ORDERED that reply papers, if any, shall be served on Defendants' attorney so as to be received by 3:00 p.m. on May __, 2007.

E N T E R:

_____
J.S.C.

- 2 -

Friday, May 04, 2007.max

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

DANCKER SELLEW & DOUGLAS, INC.,                    :     Index No.

                          Plaintiff,                        :     **AFFIDAVIT OF**
                                                                  **STEVEN LANG IN SUPPORT**
            v.                                              :     **OF MOTION FOR**
                                                                  **TEMPORARY RESTRAINING**
JOSEPH MILLER, and                                    :     **ORDER AND PRELIMINARY**
GENERAL OFFICE ENVIRONMENTS, INC.,          :     **INJUNCTION**

                          Defendants.                      :

------------------------------------------------------------x

STEVEN LANG, being duly sworn, deposes and says:

    1.      I am Vice President and General Manager of Plaintiff Dancker, Sellew &

Douglas, Inc. ("Dancker").

    2.      Dancker is a New York corporation with its principal place of business at 100

Broadway, New York, New York.

    3.      Defendant Joseph Miller ("Miller") is an individual residing at 1000 Evergreen

Avenue, Bradley Beach, New Jersey 07720.

    4.      Defendant General Office Environments, Inc. ("General Office Environments")

is, upon information and belief, a corporation that has its principal place of business at 18

Railroad Avenue, Rochelle Park, New Jersey.

5.    Dancker is in the business of selling furniture and related consulting services.

6.    One of Dancker's businesses includes the sale of laboratory furniture to construction companies and end-user clients, such as schools, colleges, and manufacturers. It was in this business that Miller worked as a sales representative for Dancker at its office at 291 Evans Way, Branchburg, New Jersey.

7.    On September 12, 2005, during his tenure as a Dancker employee, Miller signed an Employee Non-Competition, Confidentiality and Conflict of Interest Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "A."

8.    Miller resigned his employment with Dancker on April 3, 2007.

9.    On or about April 16, 2007, Miller became employed by Dancker's competitor, General Office Environments ("GOE") as a sales representative selling laboratory furnishings, the same products Miller sold for Dancker.

10.    Specifically, the Agreement provides as follows:

> **1.1** Agreement Not To Compete with Company. During the time Employee is employed by the Company (the "Term") and for a period of eighteen months following the end of the Term (the "Applicable Period"), Employee shall not own, manage, have an interest or future interest or participate in, or be employed by any Competing Business. Other than as a holder of common stock in a publicly traded company. "Competing Business" means any entity or person in the business of manufacturing, producing, selling or distributing office furnishings at any time during the Term or the Applicable Period that does business within the geographic areas comprising the principal market areas of the Company."

-2-

11.  Upon information and belief, Miller is assisting GOE in bidding on at least three projects for which Dancker is seeking to sell laboratory office furniture, including Mercer County College, Anheuser Busch, and Rutgers University. It is clear that without Miller, and the other Dancker employees that we believe Miller recruited, GOE would not have the knowledge, capacity, contacts, or ability to bid on these projects in competition with Dancker.

12.  Miller's employment with GOE is in direct violation of the terms of the Agreement because the Agreement precludes Miller from being employed by any competing business for 18 months after his employment with Dancker ended.

13.  Specifically, the Agreement provides as follows:

> **1.1** Agreement Not To Compete with Company. During the time Employee is employed by the Company (the "Term") and for a period of eighteen months following the end of the Term (the "Applicable Period"), Employee shall not own, manage, have an interest or future interest or participate in, or be employed by any Competing Business. Other than as a holder of common stock in a publicly traded company. "Competing Business" means any entity or person in the business of manufacturing, producing, selling or distributing office furnishings at any time during the Term or the Applicable Period that does business within the geographic areas comprising the principal market areas of the Company."

14.  GOE, which engages in the sale of the same office furniture products and related services as Dancker, in the same geographic region comprising the principal market areas of Dancker, specifically, central and northern New Jersey is a "Competing Business" within the meaning of that phrase in the Agreement.

-3-

15.     Accordingly, Miller is violating his Agreement by virtue of his employment as a sales representative with GOE.

16.     In the Agreement, Miller also promised that he would not, during or for a period of 18 months after the termination of his employment with Dancker, "directly or indirectly solicit or induce, or attempt to solicit or induce, any employee of [Dancker] to leave [Dancker] for any reason."

17.     Upon information and belief, Miller breached that provision of the agreement by soliciting a Dancker employee, Nicole Smith, to become an employee of GOE while Miller was still employed by Dancker. See Affidavit of Nicole Schmitz, sworn to on May 1, 2007.

18.     In a letter dated April 13, 2007, Dancker requested that Miller cease his unlawful activities. To date, Miller has declined to do so.

19.     Dancker copied Miller's employer, GOE, on the letter, and it has continued to employ Miller, tortuously interfering with Dancker's contract with Miller.

-4-

20.     Miller's actions are harming the good will of Dancker and money damages will be difficult or impossible to calculate.  Therefore, Dancker has no adequate remedy at law and will suffer imminent and irreparable harm if Miller's employment with GOE is not immediately enjoined.

I swear that the foregoing is true and correct.

                                              STEVEN LANG

SWORN TO BEFORE ME THIS
1ST DAY OF MAY 2007

NOTARY PUBLIC

                    **BETTY J. ANDRE**
                    **Notary Public of New Jersey**
                    **Commission Expires 8/9/2010**

-5-

## EMPLOYEE NONCOMPETITION, CONFIDENTIALITY AND CONFLICT OF INTEREST AGREEMENT

THIS EMPLOYEE NONCOMPETITION, CONFIDENTIALITY AND CONFLICT OF INTEREST AGREEMENT (this "Agreement"), dated as of _9/12/05_, 2005, by and between Dancker Sellew & Douglas, a corporation with offices at 291 Evans Way, Branchburg, New Jersey 08876 (the "Company"), and _Joseph M. Alicea_ ("Employee") with an address at _100 Evergreen Ave, Bradley Beach N.J. 07720_.

### WITNESSETH

WHEREAS, Employee has agreed to serve as an employee of the Company and the Employee has agreed to serve the Company under the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the Company and Employee hereby agree as follows:

**1.1     Agreement Not to Compete With Company.** During the time Employee is employed by the Company (the "Term") and for a period of eighteen months following the end of the Term (the "Applicable Period"), Employee shall not own, manage, have an interest or future interest or participate in, or be employed by any Competing Business, other than as a holder of common stock in a publicly traded company. "Competing Business" means any entity or person in the business of manufacturing, producing, selling or distributing office furnishings at any time during the Term or the Applicable Period that does business within the geographic areas comprising the principal market areas of the Company.

**2.1     Corporate Opportunities.** Any opportunity directly or indirectly related to any business engaged in by the Company, its subsidiaries or affiliates of which Employee becomes aware during the Term shall be deemed a corporate opportunity of the Company, and Employee shall promptly make such opportunity available to the Company by informing the General Manager, Human Resources, or their designees, in writing.

**3.1     Non-Solicitation of Customers.** Employee agrees that during the Applicable Period, Employee will not directly or indirectly solicit office furnishings business of any customer or prospective customer of the Company.

**4.1     Non-Solicitation of Employees.** Employee agrees that, during his/her Term and the Applicable Period, Employee will not for any reason, directly or indirectly solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason.

**5.1     Confidentiality.** Employee understands and agrees that: (a) during Employee's Term, Employee will acquire information which could include, in whole or in part, information concerning Company sales, sales volume, sales methods, sales proposals, customers and prospective customers, identity of customers and prospective customers, identity of key purchasing personnel in the employ of customers and prospective customers, amount or kind of customer purchases from the Company, Company sources of supply, Company computer programs, system documentation, special hardware, product hardware, related software development, Company manuals, formulae, processes, methods, machines, compositions, ideas,

improvements, inventions, or other confidential or proprietary information belonging to the Company or relating to the Company's affairs, including knowledge of the Company's proprietary computer software programs "Project Watch" and "Status Action" (collectively referred to as "Confidential Information"); (b) the Confidential Information is the property of the Company; (c) the use, misappropriation, or disclosure of the Confidential Information at any time, during Employee's employment or after Employee's employment ends, would constitute a breach of trust and could cause irreparable injury to the Company; (d) it is essential to the protection of the Company's good will and to the maintenance of the Company's competitive position that the Confidential Information be kept secret and that Employee not disclose the Confidential Information to others or use the Confidential Information to Employee's own advantage or the advantage of others; and (e) Employee agrees to keep said Confidential Information forever secret and will not disclose it to anyone at any time. Employee will return any documents, computerized files, or recordings of Confidential Information to the Company at the end of the Term.

      **6.1**    **Gifts; Gratuities.** The following will govern entertainment, gifts and free services from current or prospective vendors, suppliers, or distributors of the Company's products or services. Employee will not accept entertainment, gifts and/or free services (except as noted immediately below) from prospective and/or current vendors, suppliers or distributors of products or services. This includes gifts or payment for room/board or transportation for personal rather than Company benefit. Employee may accept tickets to sporting events and other entertainment events, as well as business meals and seasonal gifts provided as part of business commerce, as long as they do not exceed $150 in value, the number of such gifts does not exceed four per year from any single company, and the total value of such items from any single company should is limited to $600.00 per year. If a business courtesy exceeding the above criteria is offered, Employee will inform the General Manager, Human Resources, or their designees, who will decide in his sole discretion if Employee may accept it. No exceptions to the above policy will be made without using this procedure.

      **6.2**    **Conflict of Interest.** Employee will not misuse confidential or propriety information to which he/she has access by reason of his/her position as an Employee. Employee will not speculate or deal in equipment, supplies, materials, or property purchased by the company, or products sold by the company, for personal benefit. Employee will not borrow money from or engage in transactions with current or prospective suppliers, customers or competitors during the Term (other than personal transactions conducted with banks or other financial institutions). Employee will not perform any activities for personal remuneration which: a) involve company time, equipment, or facilities; b) involve services or work performed for the Company; c) otherwise conflict with Employee's obligations to the Company. Employee will not use or copy any materials to promote any organization Employee owns or is involved in without permission from management. Employee will not use kickbacks and gratuities to obtain business for the Company. Employee will refrain from all activities that in any way are, or appear to be, offered to obtain contracts, subcontracts or otherwise influence business decisions. Customary business courtesies (e.g. tickets for sporting events, business meals, holiday gifts) are sometimes provided to clients. The value of each such courtesy should not exceed $150. Additionally, business gifts are

2

APR-11-07  04:14PM  FROM-DSD                        +8082311200              T-662   P.04/04   F-802

occasionally given to client companies. Before any such gifts are offered, or if a business courtesy will exceed $150, the Employee should first contact the General Manager, Human Resources, or their designees, who will decide in their sole discretion whether the gift can be given. No exceptions to the above policy will be made without using this procedure. Any exception must have prior written approval from the Chairman of the Board or his or her designee.

**6.3    Conflict of Interest: Employee's Financial Interests In Other Firms.**
If Employee or a member of Employee's family has, or obtains in the future, a financial or beneficial interest in a firm, corporation, partnership, trust, estate, or any other business which is involved in a business transaction with, or in competition with, the Company, its subsidiaries, partnerships or joint ventures, this must be disclosed in writing to the General Manager, Human Resources, or to their designees. If Employee or a member of his or her family has such an interest, Employee has described it below or certified that neither he nor a member of his or her family has such an interest by writing "None" below:

Name of Person With Interest
and Family Relationship to Employee                    Name and Address of Business(es)

_____          _____

_____          _____

**6.4    Compliance with Other Laws.** Employee acknowledges that this Agreement is not exclusive of any other fiduciary or other duties Employee may owe to the Company under equitable principals, the common law, statutes, or the Company's by-laws.

**6.5    Conflict of Interest: After End of Employment.** Employee will not provide goods or services to the Company for a period of eighteen months after the end of his or her employment. Any exception to this policy must have the written approval of Human Resources, the General Manager, or their designees. Employee acknowledges that he or she should not leave the Company with the expectation that Employee can provide goods or services to the Company after the end of employment, except as provided in this paragraph.

**7.1    Injunctive Relief.** Employee acknowledges and agrees that, in the event Employee violates Sections 1.1, 2.1, 3.1, 4.1 or 5.1 hereof, the Company will be without an adequate remedy at law and will therefore be entitled to enforce such provisions by temporary and/or permanent injunctive or mandatory relief in any court of competent jurisdiction without the necessity of proving damages and without prejudice to any other remedies which it may have at law or in equity.

3

8.1 <u>New York Law; New York Forum.</u> Any questions or other matters arising under this Agreement, will be governed by and construed in accordance with the laws of the State of New Jersey, without reference to principles of conflicts or choice of law under which the law of any other jurisdiction would apply. The parties submit to the exclusive jurisdiction and venue of the state and federal courts of the State of New York to resolve all issues that may arise out of or relate to this agreement or the same subject matter.

**IN WITNESS WHEREOF**, this Agreement has been executed by Employee and then by the Company in New Jersey on the dates shown below, but effective as of the date and year first above written.

Employee: _____  Dancker Sellew & Douglas: 9|13|05
Name: Joseph M. Miller  By: Mary Snyder
Date: 9.12.05  Title: Senr Mgr DS&D

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - ~ - x

DANCKER SELLEW & DOUGLAS, INC. ,                   :   Index No.

            Plaintiff,                       :

    v.                                          :   **AFFIDAVIT OF
                                  NICOLE SCHMITZ IN**

JOSEPH MILLER, and                              :   **SUPPORT OF MOTION FOR**
GENERAL OFFICE ENVIRONMENTS, INC. ,             :   **TEMPORARY RESTRAINING
                                   ORDER AND PRELIMINARY**
              Defendants.                     :   **INJUNCTION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW JERSEY    )
                    ):ss:
COUNTY OF SOMERSET    )

    NICOLE SCHMITZ, being duly sworn, deposes and says:

    1.      I am employed as a Project Engineer by Plaintiff Dancker, Sellew & Douglas, Inc.

("Dancker").  I give this affidavit in support of Dancker's motion for a temporary restraining

order and preliminary injunction against Defendant Joseph Miller ("Miller").

    2.      As of late February or early March of 2007, Miller, who at the time was still

employed by Dancker, approached me and asked me to come into a conference room at

Dancker's offices in Branchburg, New Jersey.  At that time I was employed by Dancker as a

Project Engineer on a team that sold laboratory furniture to construction companies, schools,

colleges, and manufacturers.  Miller was a salesperson on that team as well.

    3.      In the conference room, Miller told me that he and other members of the team

(Jay Schatz, Project Manager, Robert Raus, Managing Director, and Richard Robinson, Engineering Coordinator), were planning to leave Dancker to go to work for Defendant General Office Environments, Inc. ("General Office Environments"). Miller stated that they were all trying to leave at the same time which would hurt Dancker.

4.    Miller asked me if I was interested in taking employment with GOE in light of these representations.

5.    I never gave Miller a response, however, a short time later I received communications from GOE personnel Richard Robina and Steven Grillo, asking me if I would be interested in a job at GOE.

6.    I met with Steve Grillo, in the Marriott in Somerville, New Jersey for a lunch interview. Mr. Grillo offered me employment with GOE.

7.    I worked for GOE from approximately March 12, 2007 until April 4, 2007. I have since been re-employed by Dancker.

I swear that the foregoing is true and correct.

_NICOLE SCHMITZ_

SWORN TO BEFORE ME THIS 1ST DAY
OF MAY 2007

_NOTARY PUBLIC_

**BETTY J. ANDRE**
**Notary Public of New Jersey**
**Commission Expires 8/9/2010**

-2-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

DANCKER SELLEW & DOUGLAS, INC.,

      Plaintiff,

   v.

JOSEPH MILLER, and
GENERAL OFFICE ENVIRONMENTS, INC.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - x

    :   Index No.

    :   **AFFIDAVIT OF EMERGENCY**

    :

    :

    :

    :

STATE OF NEW YORK    )
           : ss.:
COUNTY OF NEW YORK   )

   PAUL P. ROONEY, ESQ., being duly sworn, hereby deposes and says:

   1.   I am a member of the Bar of the State of New York and am counsel to the firm of Reed Smith LLP, attorney for plaintiff Dancker, Sellew & Douglas, Inc. ("Dancker") herein.

   2.   This is an action for injunctive relief, compensatory damages, and punitive damages by Defendants Joseph Miller ("Miller") and General Office Environments, Inc. ("GOE") for breach of a covenant not to compete, a covenant not to solicit employees, breach of contract, and tortious interference with contract. I submit this affidavit in support of Plaintiff's application for (1) an order to show cause, pursuant to CPLR 2214(d), scheduling a hearing on plaintiffs' motion for preliminary injunction pursuant to CPLR 6301; and (2) a temporary restraining order pending the hearing on the preliminary injunction pursuant to CPLR 6313. I have personal knowledge of the facts set forth below.

   3.   Plaintiff is applying for an order to show cause requesting the Court to set a return date for its motion for preliminary injunction and for an order temporarily restraining Defendant

Miller from: (i) continuing to be employed by Defendant General Office Environments, Inc. in violation of his Employee Noncompetition, Confidentiality, and Conflict of Interest Agreement (the "Agreement"), dated September 12, 2005, with Plaintiff Dancker Sellew & Douglas, Inc. ("Dancker"); and (ii) soliciting Dancker employees to leave their employment in violation of the Agreement.

4.      As set forth in the accompanying affidavit of Steven Lang, Vice President and General Manager of Dancker, Defendant Miller's Agreement forbids him to take employment for a period of 18 months after the termination of his employment with any "any entity or person in the business of manufacturing, producing, selling or distributing office furnishings" within the geographic areas comprising the principal market areas of the Dancker.  Miller also agreed not to solicit any Dancker employee to leave his or her employment with Dancker for a period of 18 months after his employment ended.

5.      Two weeks after Miller resigned his employment with Dancker, he took a job as a sales representative with Dancker's competitor, GOE, which sells office furniture in Central and Northern New Jersey and the New York City areas, which are the principal market areas of the Dancker.

6.      Miller's employment with GOE is a direct and blatant violation of the Agreement. Miller is assisting GOE, which had no business in the area of selling laboratory furnishings before Miller's arrival, in bidding on projects involving the sale of laboratory furniture in direct competition with Dancker.

7.      As set forth in the accompanying Affidavit of Nicole Schmitz, Miller violated his Agreement by soliciting her to leave her employment with Dancker and join him at GOE.

- 2 -

8.    Defendant Miller's unlawful activities have caused, and are continuing to cause, severe financial harm to Dancker and irreparable damage to Dancker's goodwill and business that will not be compensable by money damages.

7.    Immediate injunctive relief is necessary to preserve the status quo and to protect the interests of Dancker from irreparable harm.

8.    No prior application for a temporary restraining order, a preliminary injunction or for similar relief to that requested herein has been made to this or any other court.

WHEREFORE, Plaintiff respectfully requests an order (1) pursuant to CPLR 2214(d) scheduling a hearing on plaintiffs' motion for a preliminary injunction pursuant to CPLR 6301; (2) granting a temporary restraining order pending the hearing on the preliminary injunction pursuant to CPLR 6313; and (3) such other and further relief as the Court deems proper.

_____
Paul P. Rooney

Sworn to before me this
2nd day of May 2007

_____
Notary Public

YVONNE WILLIAMS
Notary Public, State of New York
No. 01WI4780572
Qualified in Queens County
Commission Expires Nov. 30, 20___

- 3 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

DANCKER, SELLEW & DOUGLAS, INC.,

       Plaintiff,

       against

JOSEPH MILLER and
GENERAL OFFICE ENVIRONMENTS, INC.
Defendants.

---

: Index No.
:
: **AFFIRMATION OF NON-**
: **FRIVOLOUSNESS PURSUANT TO**
: **RULE 130-1.1-a IN SUPPORT**
: **OF ORDER TO SHOW CAUSE**
:
:
:
:
:
:
:

       I, Paul P. Rooney, an attorney duly admitted to the practice of law before the bar of the

State of New York, hereby affirm that the following is true under the penalty of perjury pursuant

to CPLR 2106:

       1.     I am an attorney with the law firm of Reed Smith LLP and give this affirmation in

support of the motion to for a temporary restraining order and preliminary injunction of Plaintiff

Dancker, Sellew & Douglas, Inc.

       2.     Pursuant to § 130-1.1-a, I hereby certify that to the best of my knowledge,

information and belief, formed after an inquiry reasonable under the circumstances, the

presentation of the Order to Show Cause, supporting affidavits, and memorandum of law and the

contentions therein, are not frivolous as defined in subsection (c) of section 130-1.1.

Dated: New York, New York
      May 2, 2007

Respectfully submitted,

REED SMITH LLP

BY: _____

    Paul P. Rooney

599 Lexington Avenue, 29th Floor
New York, New York 10022
Telephone: (212) 521-5400

*Attorneys for Plaintiff Dancker, Sellew &*
*Douglas, Inc.*

-2-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – x

DANCKER SELLEW & DOUGLAS, INC.,

Plaintiff,

v.

JOSEPH MILLER, and
GENERAL OFFICE ENVIRONMENTS, INC.,

Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – x

Index No. 105976/07

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION

---

Paul P. Rooney
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5435

*Attorneys for Plaintiff*
*Dancker, Sellew & Douglas, Inc,*

Dated: May 2, 2007
New York, New York

## PRELIMINARY STATEMENT

In this action, plaintiff Dancker, Sellew & Douglas, Inc. ("Dancker") seeks a temporary restraining order and preliminary injunction against defendant Joseph Miller ("Miller").

Dancker is a New York corporation engaged in the highly competitive business of selling office furniture and related consulting services. While Dancker employed him, Miller worked as a sales representative as part of a team that sold furnishings for laboratories.

As part of the conditions of his employment, Dancker required Miller to enter into an Employee Noncompetition, Confidentiality and Conflict of Interest Agreement (the "Agreement"). *See* Affidavit of Steven Lang, sworn to May 1, 2007, Ex. "A" ("Lang Aff."). The Agreement protects Dancker from exploitation and appropriation of customer good will that Dancker creates and maintains at its expense. Specifically, it prohibits Miller from becoming employed by a competing business, defined as a company selling office furnishings in the principal geographic areas in which Dancker operates, for eighteen months after his employment with Dancker ends.

Miller resigned his employment on April 3, 2007. In blatant disregard for his Agreement, on April 16, 2007, Miller took a job with Dancker's competitor, General Office Environments ("GOE") as a sales representative. Moreover, while Dancker employed him, Miller recruited a project engineer, Nicole Schmitz, from his team, and upon information and belief, assisted in recruiting other members of his team to join GOE. Using Miller's experience and good will that be built up at Dancker in the area of laboratory furnishings, GOE, which had no business in the area of laboratory furnishings, is now bidding on three projects to sell laboratory furniture in direct competition with Dancker.

If Miller is permitted to continue to breach his Agreement, he will cause imminent and irreparable harm to the good will and business of Dancker for which Dancker will have not an adequate remedy at law. Accordingly, Dancker requests that the Court enter a temporary restraining order and hold a hearing on the entry of a preliminary injunction against Miller's continued employment at GOE, and against his solicitation of Dancker employees.

- 1 -

## SUMMARY OF FACTS

Dancker is a New York corporation with its principal place of business at 100 Broadway, New York, New York. Verified Complaint ¶ 1. Defendant Miller is an individual residing at 1000 Evergreen Avenue, Bradley Beach, New Jersey 07720. *Id.* ¶ 2. Defendant GOE is a corporation that has its principal place of business at 18 Railroad Avenue, Rochelle Park, New Jersey. *Id.* ¶ 3.

Dancker is in the business of selling furniture and related consulting services. Lang Aff. ¶ 5. Dancker's business includes the sale of laboratory furniture to construction companies and end-user clients, such as schools, colleges, and manufacturers. It was in this business that Miller worked as a sales representative for Dancker at its office at 291 Evans Way, Branchburg, New Jersey. *Id.* ¶ 6.

On September 12, 2005, during his tenure as a Dancker employee, Miller signed the Agreement. *Id.*, Ex. "A" at 4. As a Dancker sales representative, Miller was given an expense account, and access to all of Dancker's clients, personnel and resources, for the purpose of building the good will of Dancker. Ver. Complaint. ¶ 10. The Agreement is intended to provide reasonable protection to Dancker's good will and to prevent the good will that Dancker created and maintained at its expense from being appropriated and exploited by Miller for a competitor of Dancker. *Id.*

Miller resigned his employment with Dancker on April 3, 2007. Lang Aff. ¶ 8. On or about April 16, 2007, Miller became employed by Dancker's competitor, GOE, as a sales representative selling laboratory furnishings. GOE did not have any business in the area of laboratory furniture before Miller joined GOE along with other Dancker employees that, upon information and belief, Miller recruited from Dancker's laboratory furniture team. Ver. Complaint ¶ 12; Lang Aff. ¶ 11.

Upon information and belief, Miller is assisting GOE in bidding on at least three projects for which Dancker is seeking to sell laboratory office furniture to clients, including Mercer

- 2 -

County College, Anheuser Busch, and Rutgers University. It is clear that, without Miller, and the other Dancker employees that Dancker believes Miller recruited, GOE would not have the knowledge, capacity, contacts, or ability to bid on these projects in competition with Dancker. Lang Aff. ¶ 11.

Miller's employment with GOE is in direct violation of the terms of the Agreement because the Agreement precludes Miller from being employed by any competing business for 18 months after his employment with Dancker ends. *Id.* ¶ 12. Specifically, the Agreement provides as follows:

> **1.1 Agreement Not To Compete with Company.** During the time Employee is employed by the Company (the "Term") and for a period of eighteen months following the end of the Term (the "Applicable Period"), Employee shall not own, manage, have an interest or future interest or participate in, or be employed by any Competing Business, other than as a holder of common stock in a publicly traded company. "Competing Business" means any entity or person in the business of manufacturing, producing, selling or distributing office furnishings at any time during the Term or the Applicable Period that does business within the geographic areas comprising the principal market areas of the Company."

Lang Aff. Ex. "A."

GOE, which engages in the sale of the same office furniture products and related services as Dancker, in the same geographic region comprising the principal market areas of Dancker, specifically, central and northern New Jersey and the New York City area, is a "Competing Business" within the meaning of that phase in the Agreement. Lang Aff. ¶ 14. Accordingly, Miller is violating his Agreement by virtue of his employment as a sales representative with GOE. *Id.* ¶ 15.

In the Agreement, Miller also promised that he would not, during or for a period of 18 months after the termination of his employment with Dancker, "directly or indirectly solicit or induce, or attempt to solicit or induce, any employee of [Dancker] to leave [Dancker] for any reason." Lang Aff., Ex. "A" ¶ 4.1. Miller breached that provision of the Agreement by soliciting a Dancker Project Engineer, who worked on Miller's laboratory furniture team, Nicole

- 3 -

Schmitz, to become an employee of GOE while Miller was still employed by Dancker. *See* Affidavit of Nicole Schmitz (submitted herewith).

In a letter dated April 13, 2007, Dancker requested that Miller cease his unlawful activities. To date, Miller has declined to do so. Dancker copied Miller's employer, GOE, on the letter, and it too has continued to employ Miller, tortiously interfering with Dancker's contract with Miller. Lang Aff. ¶¶ 18-19.

Miller's actions are harming the good will of Dancker and money damages will be difficult or impossible to calculate. Therefore, Dancker has no adequate remedy at law and will suffer irreparable harm if Miller's actions are not immediately enjoined. Lang Aff. ¶ 20.

## LEGAL ARGUMENT

### POINT I

### Plaintiff Is Entitled To A Temporary Restraining Order And Preliminary Injunctive Relief Against Miller

Temporary and preliminary injunctive relief are appropriate where as here, the plaintiff demonstrates: (1) the likelihood of success on the merits; (2) irreparable injury in the absence of such injunctive relief, and (3) the equities balance in Plaintiff's favor. *Seitzman v. Hudson River Assoc.*, 26 A.D. 211, 513 N.Y.S.2d 148, 149 (1st Dept. 1987); *McLaughlin, Piven, Vogel v. W.J. Nolan & Co.*, 114 A.D.2d 165, 498 N.Y.S.2d 146, 151 (2d Dept. 1986). If the plaintiff can show that immediate and irreparable injury, or loss or damages will result unless the defendant is restrained before a hearing can be had, a temporary restraining order may be granted without notice. CPLR § 6313 (McKinney 1995).

Here, Dancker meets all of the prerequisites for the issuance of temporary and preliminary injunctive relief. In this case, a temporary restraining order must issue to preserve the status quo pending resolution of the motion for a preliminary injunction, otherwise, the Company will suffer immediate and irreparable harm through the loss of its customers and

- 4 -

goodwill. Moreover, Defendants must be preliminarily enjoined in order to preserve the status quo pending trial. *McLaughlin, Piven, Vogel*, 498 N. Y. S. 2d at 151.

### A.    Plaintiff is Likely to Succeed on The Merits of Its Claims.

In the Agreement, the parties agreed that "[a]ny questions or other matter arising under this Agreement, will be governed by and construed in accordance with the laws of the State of New Jersey." Accordingly, in this case the substantive issue of the enforceability of the covenants at issue is governed by New Jersey law.

Based on the facts described above, it is clear that defendant Miller: 1) violated the non-competition provision of his Agreement with Dancker; 2) violated his agreement not to solicit employees of Dancker to leave their employment during or after his employment with Dancker ended. Therefore, there is a strong likelihood that ALS will succeed on the merits of its claims.[1]

### 1.    Breach of Restrictive Covenant By Miller

#### a)    The Restrictive Covenant Is Enforceable Under Settled New Jersey Law.

It is well settled under New Jersey law an employee's post-employment restrictive covenants are enforceable to the extent that they are reasonable under all of the circumstances of the case. *Karlin v. Weinberg*, 77 N.J. 408, 417 (1978); *Solari Industries, Inc. v. Malady*, 55 N.J. 571, 585 (App. Div. 1970); *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274,293 (Law Div. 1995). As explained by the court in *Platinum Mgmt.*:

> Among other matters, the court must consider the circumstances in which [the restrictive covenant] was executed and in which it is to apply. To be enforceable, the covenant must satisfy a three-prong test: [1] it must be reasonably necessary to protect the employer's legitimate interests, [2] must not cause undue hardship on the employee and [3] must not impair the public interest.

285 N.J. Super. at 293-94 (citing *Solari*, 55 N.J. at 585); *see also Karlin*, 77 N.J. at 417.

---

[1]    For the purposes of this Order to Show Cause, Dancker has focused on Miller's breach of the restrictive covenant in his Agreement. Dancker reserves its right to address the other causes of action once discovery has been taken.

- 5 -

As set forth below, Dancker has satisfied each of the above elements and has demonstrated its entitlement to injunctive relief. Accordingly, its application for a temporary restraining order and preliminary injunction should be granted.

The Agreement to which Miller voluntarily agreed contains the following narrowly-tailored post-employment restriction on competition:

> During the time Employee is employed by the Company (the "Term") and for a period of eighteen months following the end of the Term (the "Applicable Period"), Employee shall not own, manage, have an interest or future interest or participate in, or be employed by any Competing Business, other than as a holder of common stock in a publicly traded company. "Competing Business" means any entity or person in the business of manufacturing, producing, selling or distributing office furnishings at any time during the Term or the Applicable Period that does business within the geographic areas comprising the principal market areas of the Company."

Lang Aff. Ex. "A."

This narrowly-tailored restriction is patently reasonable. As noted above, Dancker services clients in the highly competitive office furniture business. Dancker required Miller to enter into a restrictive covenant. This is because Dancker provides its sales representatives with expense accounts and access to all of its personnel, resources, and clients. By giving its employees direct access to clients, Dancker exposes itself to the possibility that good will that it creates, and maintains, at its own expense will be appropriated by ex-employees and Dancker's competitors. Thus, strong restrictive covenants are vital to protect Dancker's business. Accordingly, under governing New Jersey law, the restrictions that defendants agreed to honor are fully enforceable. *See Karlin*, 77 N.J. at 417.

Furthermore, the limited restrictions in the Agreement are reasonable in their geographic and temporal scope. The Agreement merely restricts Miller from working for competing businesses that operated in the same geographic region as Dancker for a period of eighteen months after he resigned from Dancker. *See Chas. S. Wood & Co. v. Kane*, 42 N.J. Super. 122,127 (App. Div. 1956) (explaining that limitational covenants included in an agreement in

- 6 -

which parties voluntarily engage are presumed reasonably necessary). Therefore, as the parties voluntarily entered into the Agreements, the limited restrictions contained therein are reasonable as a matter of law.[2]

    **b)**    **The Restrictive Covenants Are Reasonably Necessary To Protect Plaintiff's Legitimate Interests**

As stated above, Dancker has a legitimate interest in the protection of its good will which it has expended considerable effort and expense to create and maintain. *A.T. Hudson & Co., Inc. v. Donovan*, 216 N.J. Super. 426, 433 (App. Div. 1987).

For example, in *A.T. Hudson & Co.*, the New Jersey Appellate Division held that when the employer is involved in a business requiring the investment of time and effort to develop relationships with its customers, those relationships constitute a legitimate interest warranting the protection afforded by a covenant not to compete. 216 N.J. Super. at 433. Thus, the court found that the money and effort spent by a company in attracting customers should be protected by preventing a departing employee from soliciting that company's customers:

> Consulting firms expend great energy and money in soliciting customers and developing projects for their benefit. Each client that plaintiff is able to attract represents a significant investment of time, effort and money which is worthy of protection.

*Id.* *See also Mailman Ross*, 183 N.J. Super. at 440 ("An employer's ongoing professional relationship with its clients is generally recognized as a legitimate business interest ...")

---

    2    Should the Court determine, however, that the restrictive covenants contained in the Agreements are unreasonable temporally, geographically, or in scope, the Court may, in its discretion, "trim" the restrictive covenant's geographical area, period of enforceability, or scope of activity. *See Coskey's T.V. & Radio Sales & Serv., Inc. v. Foti*, 253 N.J. Super. 626, 634 (App. Div. 1992) (citing *Solari*, 55 N.J. at 585). Such an amendment will not void the Agreements. Moreover, Section 13 of the Agreements contemplates the possibility of "trimming" stating, in pertinent part:

> If any of the provisions of this Agreement are held to be unenforceable because of the duration or geographic area of such provision being unreasonable, the Court making such determination shall have the power to modify the duration, geographic area and/or other terms of such provisions and as so modified, such provisions shall then be enforceable.

Here, as in *A.T. Hudson & Co.*, Dancker has expended money and effort to create and maintain good will of its customers and to foster the relationships between Miller and Dancker's current and potential clients. Therefore, a limited temporal and geographic restriction on Miller's ability to compete with Dancker in the furniture business is the <u>only</u> way to protect Dancker's legitimate interests.

Miller is not attempting to divert from Dancker to GOE clients and prospective clients who would otherwise utilize Dancker to fulfill its needs for laboratory furnishings. As a matter of law, ALS has a legitimate interest in protecting those client and prospective client relationships. *See Ellis v. Lionikis*, 162 N.J. Super 579 (App. Div. 1978) (holding that employer's protection of established relationships that the employee acquired in the course of employment is a legitimate interest entitled to protection). Thus, the restrictive covenants are reasonably necessary to protect ALS' legitimate interests.

<b>c)    Enforcing the Restrictive Covenants Is Not Unduly Burdensome To Defendant</b>

Here, enforcement of the restrictive covenants entered into between Dancker and Miller would not unduly burden Miller. A restrictive covenant that permits an employee to continue to practice his or her profession, but prevents him or her from depriving his or her former employer of its relationships with its customers, does not impose an undue hardship on the employee. <u>Solari</u>, 55 N.J. at 576.

Further, the *Karlin* Court directed that the analysis of undue hardship on a departing employee must focus upon whether (i) the employee could find work elsewhere; and (ii) the reason for the termination of the relationship between the employee and the employer. <u>Karlin</u>, 77 N.J. at 423. The Court explained:

> Where the breach results from the desire of an employee to end his relationship with his employer rather than from any wrongdoing by the employer, a court should be hesitant to find undue hardship on the employee, he in effect having brought that hardship on himself. Ordinarily a showing of personal hardship, without more, will not amount to an 'undue hardship' such as would prevent enforcement of the covenant.

- 8 -

Id. at 424.

Miller is totally free to work in the furniture business so long as he does not do so within the principal geographic areas in which Dancker does business, i.e., Northern and Central New Jersey, New York and its surrounding counties for an eighteen month period. With full knowledge of the restrictive covenants, however, Miller has chosen to help Dancker's competitor GOE start a business selling laboratory furnishings from scratch and to recruit Dancker employees to help in that effort. As Miller acted at his own peril, the Court should not hesitate in finding no undue hardship on Miller.

Further, it must be noted that Dancker does not seek to lessen competition through the enforcement of its Agreements. *See Raven*, 195 N.J. Super. at 213. Nor is Dancker requesting that Miller be enjoined from earning a livelihood. Rather, Dancker seeks enforcement of an agreed-upon restrictive covenant designed only to protect Dancker in its investment in its employees and the client relationships it has developed through the years. In short, the restrictive covenants within the Agreement between defendant and Dancker fall well within the parameters set by *Solari* and *Karlin* and are valid.

> **d)      Enforcing The Restrictive Covenants Would Not Impair The Public Interest.**

The imposition of a temporary restraining order and preliminary injunction to enforce the restrictive covenants would not impair the public interest, as it poses no impediment to the availability of laboratory furnishings to the public. Moreover, such a restrictive covenant will **support** the public interest because it would set a precedent that may deter employees in similar situations in the future from violating the restrictive covenants governing their employment relationships.

> **B.      Absent The Entry Of A Temporary Restraining Order And A Preliminary Injunction, Plaintiff Will Be Irreparably Harmed.**

Harm is irreparable if it cannot be adequately redressed by damages. *See Subcarrier*, 299 N.J. Super. at 638. In demonstrating "irreparable injury," a plaintiff need only show a

"likelihood" of such harm. *See Wyrough & Loser, Inc. v. Pelmer Laboratories, Inc.*, 376 F.2d
543 (3d Cir. 1967); *Industrial Electronics Corp. v. Cline*, 330 F.2d 480, 483 (3d Cir. 1964)
(injunction should be granted if irreparable injury "would possibly result" if relief were denied);
*Thompson*, 9 N.J. Eq. at 624.

The violation of a restrictive covenant to appropriate Dancker's good will to, in effect,
steal customers or interfere with business relationships has been found to constitute irreparable
harm. *See Sun Dial Corp. v. Rideout*, 16 N.J. 252, 259 (1954) (employee's wrongful conduct in
violating trade secret confidence furnishes a "clear and persuasive basis for equitable
intervention"); *Platinum Mgmt.*, 285 N.J. Super. at 297-98.   Dancker stands to lose an
undetermined number of clients and to see its business relationships with other clients suffer if
Miller continues to violate the law.

Moreover, there is no straightforward calculation of damages that may befall Dancker.
Indeed, that is precisely why its Agreements with Miller contain the express understanding and
agreement of Miller that a temporary restraining order and/or preliminary injunction shall be an
appropriate remedy. Lang Aff., Ex. "A," at 3, ¶ 7.1.   Accordingly, because damages are
impossible to calculate in this case, both temporary restraints and a preliminary injunction are
necessary to prevent irreparable harm.

C.      **The Equities Weigh In Favor Of Granting Injunctive Relief
        Because The Extraordinary Harm To Plaintiff Far Outweighs
        Any Potential Harm That May Befall Defendant.**

Injunctive relief is appropriate where, assuming the party that is enjoined later prevails at
a final hearing, the injury that the enjoined party would suffer is outweighed by the injury the
moving party would suffer if no injunction issues and the moving party prevails. *Seitzman v.
Hudson River Assoc.*, 26 A.D. 211, 513 N.Y.S.2d 148, 149 (1st Dept. 1987); *McLaughlin, Piven,
Vogel v. W.J. Nolan & Co.*, 114 A.D.2d 165, 498 N.Y.S.2d 146, 151 (2d Dept. 1986).

If this Court does not grant temporary restraints and a preliminary injunction, Dancker's
business, its business relationships and its goodwill will be destroyed by Miller's unfair and

- 10 -

unlawful actions. As is, Dancker's business has suffered immeasurably since Miller, in combination with GOE and other Dancker employees he evidently recruited, initiated their plot to steal Dancker's clients and potential clients using Dancker's good will.

In contrast, the imposition of the requested restraints would merely require Miller to do that which he already is obligated to do by law; that is, honor his obligations set forth in the Agreement he signed. The restraint would merely prevent Miller from breaching his Agreement and unfairly exploiting and appropriating Dancker's good will accumulated through years of work and investment of financial and other resources and further damaging Dancker's business relationships. Balancing the drastic harm Dancker will suffer if the temporary restraining order and preliminary injunction are not issued, against the complete absence of harm such restraints would impose upon Miller, it is clear that a balancing of the equities strongly favors granting the requested injunctive relief.

In sum, Dancker has satisfied the requirements for the entry of injunctive relief. Therefore, ALS is entitled to temporary restraints and a preliminary injunction:

1.   enjoining Miller from his continued employment with GOE for a period of 18 months from the date Miller resigned his employment with Dancker;

2.   enjoining Miller from becoming employed by any employer that in the business of manufacturing, producing, selling or distributing office furnishings that does business in the principal market areas of the Dancker, i.e., central and northern New Jersey, New York City and its adjoining counties;

3.   enjoining Miller from soliciting any of Dancker's employees from leaving their employment with Dancker.

**CONCLUSION**

For all of the reasons set forth herein, Dancker respectfully requests that the Court grant plaintiff's request for a temporary restraining order and a preliminary injunction against Defendant Miller.

Dated: May 2, 2007
New York, New York

REED SMITH LLP
599 Lexington Avenue, 28th Floor
New York, New York 10022
(212) 521-5435
(212) 521-5450 (fax)

By: _____
Paul P. Rooney

- 12 -

Paul H. Levinson, Esq. (PL 5528)
**McLaughlin & Stern, LLP**
260 Madison Avenue, 18th Floor
New York, New York 10016
Tel.: (212) 448-1100 (ext. 190)

Christopher E. Hartmann, Esq. (CH 4873)
**Wacks & Hartmann, LLC**
404 Park Avenue South, 14th Floor
New York, New York
(973) 644-0770 (ext. 204)
(212) 481-2744
*Attorneys for Defendant General Office Environments*

MAY 0 4 2007

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANCKER, SELLEW & DOUGLAS, | Civil Action No.: |
| Plaintiff, | |
| against | |
| | **FED. R. CIV. P. 7.1** |
| | **DISCLOSURE STATEMENT** |
| JOSEPH MILLER and | |
| GENERAL OFFICE ENVIRONMENTS, INC., | |
| Defendants. | |

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned, counsel for defendant General Office Environments, Inc. ("GOE") states that GOE is a closely owned family business. None of GOE's stock is publicly held.

By: _Paul H. Levinson_
Paul H. Levinson
(PL 5528)

May 4, 2007